**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JORGE JAVIER RODRIGUEZ CABRERA,

Petitioner,

v.

JOHN MATTOS, *et al.*,

Respondents.

Case No. 2:25-cv-01551-RFB-EJY

**ORDER GRANTING PETITIONER'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER THE EAJA**

Petitioner Jorge Javier Rodriguez Cabrera initiated this action in August 2025 by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 to challenge his civil detention by Respondents (ECF No. 1) (the "Petition"). On November 3, 2025, this Court granted the Petition on due process grounds and ordered Petitioner be immediately released. See generally Order Granting the Writ, ECF No. 36 [hereinafter, "Order Granting the Writ"].

The matter now before this Court is Petitioner's Motion for Attorney's Fees and Costs under the Equal Access to Justice Act ("EAJA") (ECF No. 43). For the following reasons, the Court grants the motion and awards Petitioner fees and costs under the EAJA in the amount of $37,079.80.

## I. LEGAL STANDARD

"The EAJA provides . . . that in an action brought by or against the United States, a court must award fees and expenses to a prevailing non-government party 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" Medina Tovar v. Zuchowski, 41 F.4th 1085, 1089 (9th Cir. 2022) (quoting 28

U.S.C. § 2412(d)(1)(A)). Specifically, to award fees and expenses, a court must find the following: "(1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." Perez-Arellano v. Smith, 279 F.3d 791, 793 (9th Cir. 2002).

"It is the government's burden to show that its position was substantially justified." Medina Tovar, 41 F.4th at 1089. "Substantially justified" means "justified to a degree that could satisfy a reasonable person." Meier v. Colvin, 727 F.3d 867, 870 (9th Cir. 2013) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" Id. (quoting Pierce, 487 U.S. at 565). The court examines "both the government's litigation position and the underlying agency action giving rise to the civil action." Id. Whether the government's position was substantially justified is a matter of discretion for the district court. See id. at 869.

With respect to the reasonableness of fees and costs, EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). A court may award market rates based on the limited availability of qualified attorneys when the attorneys possess (1) "distinctive knowledge and specialized skill" that was (2) "needful to the litigation in question" and (3) "not available elsewhere at the statutory rate." Nadarajah v. Holder, 569 F.3d 906, 912 (9th Cir. 2009) (citation modified).

Under Federal Rule of Civil Procedure 54(d)(2)(C), when ruling on a motion for attorney's fees, the Court "must find the facts and state its conclusions of law as provided in Rule 52(a)," meaning "the court must find the facts specially and state its conclusions of law separately." FED. R. CIV. P. 52(a)(1), 54(d)(2)(C).

## II. FINDINGS OF FACT

The Court incorporates by reference its findings of fact as set forth in the Order granting

the Petition. See Order Granting the Writ at 1–10. The Court also briefly summarizes its most relevant factual findings herein.

After being arrested and detained by ICE on July 21, 2025, Petitioner successfully established at an August 14, 2025 custody redetermination hearing before an immigration judge ("IJ") that he was neither a danger to the community nor a flight risk, pursuant to § 1226(a) and its implementing regulations. See id. at 7–8. The IJ granted Petitioner release on bond in the amount of $2,500. See id. at 7. On the same day the IJ ordered Petitioner's release on bond, ICE filed a Form EOIR-43, invoking the unilateral automatic stay pending appeal of the IJ's bond decision regarding Petitioner pursuant to 8 C.F.R. §1003.19(i)(2). See id. at 8. On August 21, 2025, the Department of Homeland Security ("DHS") filed its Notice of Appeal with a certification by Chief Counsel of ICE, thereby preserving the automatic stay under 8 C.F.R § 1003.6(c)(1). See id.

On October 30, 2025, the Court held a hearing on the Petition, wherein Federal Respondents asserted that the Court should delay its decision, as Petitioner would be granted legal status via his concurrent immigration court proceedings in a matter of weeks. Respondents asserted that, upon being granted legal status, Petitioner would be released from detention, rendering the Petition moot at that time. See Order Granting the Writ at 9. Federal Respondents' counsel stated that he had been communicating with the agency and that his representations regarding the upcoming immigration court hearing, DHS's position, and the expected outcome were based on his communications with DHS. However, the very next day, DHS submitted evidence in opposition to Petitioner's application for relief under the Cuban Adjustment Act to the immigration court. See Order Granting the Writ at 9.

On November 3, 2025, the Court granted the Petition and ordered Petitioner be immediately released. See id. at 25. Petitioner now requests the Court award attorney's fees in the amount of $37,079.80. See Mot. for Attorney's Fees, ECF No. 36 at 19–20; Reply to Mot. for Attorney's Fees [hereinafter, "Reply"], ECF No. 45-1. Counsel for Petitioner spent 119.7 hours on this case, and Petitioner requests fees at the statutory rate adjusted for inflation and cost of living in the amount of $258.46 per hour, totaling $30,937.66. See id. In addition, Petitioner requests $6,142.14 in costs including, *inter alia*, *pro hac vice* fees, airfare to and from Las Vegas for the

October 2025 hearing, other travel expenses, local counsel fees, and Westlaw access fees.

In their opposition to the Motion for Attorney's Fees, Respondents assert that because the statutory question concerning immigration detention authority under 8 U.S.C. § 1226(a) and § 1225(b) is actively being litigated, with different district courts reaching different conclusions, their position was substantially justified. See Response to Mot. for Attorney's Fees [hereinafter, "Opposition"], ECF No. 44 at 4–6. In doing so, the government points to other district courts that have adopted the government's novel statutory interpretation, as well as the Fifth Circuit's decision, Buenrostro-Mendez v. Bondi, which also adopted the same statutory interpretation, but came out after the decision in this case was rendered. See id. at 4–5.

In defense of their arguments regarding the automatic stay regulation, Respondents offer only a single paragraph, which cites to a 2016 District of Arizona opinion that held the 90-day stay was not facially unconstitutional. See Opposition at 6–7; see also Altayar v. Lynch, No. CV-16-02479-PHX-GMS-JZB, 2016 WL 7383340 (D. Ariz. Nov. 23, 2016), report and recommendation adopted, No. CV-16-02479-PHX-GMS, 2016 WL 7373353 (D. Ariz. Dec. 20, 2016) ("[A]n automatic stay of up to 90 days does not violate due process because it is narrowly tailored to serve a compelling Government interest.").

Based upon this, the Court finds Respondents' opposition to the instant motion does not offer any defense for Respondents' as-applied due process positions, nor did it even acknowledge the bulk of this Court's decision—*i.e.*, independent procedural and substantive due process holdings regarding the use of the automatic stay *as applied to this Petitioner*. See generally Opposition; see also Order Granting the Writ at 18–25. In its Order, the Court granted relief on due process grounds, explicitly stated it need not reach the unique statutory question posed by the parole issue presented in this case, and addressed the government's § 1225(b)(2)(A) reinterpretation only "[t]o the extent Respondents assert they have the authority to continue to detain Petitioner under § 1225(b)(2)(A) pursuant to Hurtado." See Order Granting the Writ at 17–25. As Petitioner points out in his Reply, "this Court's ruling rested on the due process defects in using an automatic-stay mechanism to nullify an immigration judge's individualized release decision, and to prolong detention without meaningful process to challenge it . . . . the Court's

analysis was grounded in Mathews v. Eldridge and carefully evaluated Petitioner's specific circumstances." Reply at 5 (internal citations omitted).

In addition, to the extent Respondents are attempting to hinge their justification on the validity of the "finite," limited nature of the 90-day automatic stay, the Court finds that (i.) this is the first time Respondents have taken this position; and (ii.) it is a post-hoc justification at odds with Respondents' prior arguments to this Court. At the October 30, 2025, hearing, Respondents argued to this Court that Petitioner should remain in custody until at least November 14, 2025, when they allegedly expected him to receive relief in his immigration court proceedings that would lead to release. If DHS were, as Respondents' counsel now seems to represent, respecting the finite, 90-day nature of the automatic stay as a matter of policy, the stay would have lapsed on November 12, 2025, necessitating Petitioner's relief at that time. See Tr. of Proceedings, October 30, 2025, Hearing, ECF No. 37 at 7–10 [hereinafter, "Tr. of Proceedings"]. To be clear, Respondents have not pointed to a case wherein DHS adhered to such a policy. With that in mind, the Court finds Respondents have offered, at best, conflicting positions through their arguments on the merits of the Petition then in their opposition to the instant, underlying motion regarding whether DHS would have released Petitioner upon the automatic stay's expiration.

Respondents do not contest that Petitioner is the prevailing party in this matter or that the fees and costs requested by Petitioner are not reasonable. See generally Opposition. In doing so, Respondents narrow the disputed issues before the Court to the singular question of whether or not the government's position in this matter was "substantially justified." Id. at 1.

## III. CONCLUSIONS OF LAW

Parties do not dispute that Petitioner is the prevailing party, and the Court affirms this conclusion. See 28 U.S.C. § 2412(d). In addition, there is no dispute that the requested fees are reasonable in this case, and the Court in its review confirms the reasonableness of the sought fees under EAJA and Ninth Circuit standards. The only remaining issue is therefore whether the government's position in this matter was "substantially justified."

As previously stated, the "position of the United States" includes both the government's

litigation position and the underlying agency action giving rise to the civil action. Meier, 727 F.3d at 870. Here, the Court finds the government's position lacked a reasonable basis in law and fact, because, regardless of the constitutionality of 8 C.F.R. § 1003.19(i)(2) or the validity of their statutory interpretation under § 1225(b)(2)(A), Respondents failed to provide an objectively reasonable explanation for the agency's use of the automatic stay *in this case, as to this Petitioner*.

First, because Respondents entirely failed to offer any justification of their position regarding Petitioner's substantive and procedural due process challenges to the automatic stay *as applied* to him, the Court concludes they have provided no substantial justification for their position on Petitioner's as-applied due process challenges. The invocation of a single, non-binding, not-on-point district court case on whether the length of the automatic stay does or does not violate due process cannot justify the fact-specific procedural and substantive due process issues posed by this case.

Second, the Court finds Respondents' argument about the 90-day finite nature of the automatic stay is a *post-hoc* justification. Respondents have pointed to zero cases wherein DHS released an individual upon expiration of the 90-day automatic stay; to the contrary, Respondents' counsel explicitly argued that this Court should allow for Petitioner to be detained at least two days beyond the expiration date of the stay. See Tr. of Proceedings at 7–10.

Third, Federal Respondents openly admitted to this Court that there was no individualized justification for Petitioner's detention. See Tr. of Proceedings at 6 (Respondents' counsel asserting that the automatic stay is the singular justification for Petitioner's detention when asked if there was any other basis). It is an unreasonable position to both continue an individual's detention while representing to the Court that that individual is expected to receive relief imminently—relief DHS will not oppose—yet offer no individualized justification why that individual should be detained in the interim weeks. Based upon this, the Court adopts its prior finding herein: "Respondents thereby admitted that Petitioner would continue to be deprived of his liberty until then for no apparent reason . . . . Respondents have not articulated any individualized interest—let alone compelling interest—to justify Petitioner's continued detention." Order Granting the Writ at 24.

Finally, Respondents' counsel's representations to this Court, which were based upon

purported communications with DHS, proved unreliable by the contradictory agency action taken by DHS the very next day. Compare Tr. of Proceedings at 7 (indicating that counsel had spoken with DHS and that DHS has indicated on the record that they would not appeal a decision granting Petitioner relief under the Cuban Adjustment Act) with Notice of Developments Subsequent to October 30, 2025, Hearing, ECF No. 35 at 2 (notifying the Court that "[o]n October 31, 2025, DHS submitted a filing in immigration court reflecting its intention to oppose the granting of Cuban Adjustment to Petitioner"). As a result, and under Meier, the government can hardly be said to have taken a coherent "position," let alone a substantially justified one, based upon the agency's unreasonable, arguably bad faith misrepresentations as to their actual position.

Based on the foregoing, the Court finds Respondents have not met their burden to establish that their position was substantially justified under the EAJA. The Court therefore awards Petitioner $37,079.80 in attorney's fees.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner's Motion for Attorney's Fees and Costs under the EAJA is **GRANTED**. Petitioner is awarded fees and costs under the EAJA in the amount of $37,079.80. The Clerk of Court is instructed to enter an amended judgment to include this award in favor of Petitioner.

**IT IS FURTHER ORDERED**, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Clerk of Court will **SUBSTITUTE** (i.) Ruben Leyva for Jason Knight; (ii.) Markwayne Mullin for Kristi Noem; and (iii.) Todd Blanche for Pamela Bondi as the named Respondents in this action and update the docket accordingly.

**DATED:** September 29, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**